18.     In or around October 2009, Ms. Marshall was transferred to the Starbucks branch located at 345 Hudson Street, New York, New York (the "345 Hudson Store"), which was her last place of employment with Starbucks, where her salary was approximately $50,000 per year.

**Plaintiff's Serious Medical Condition and/or Disability**

19.     On or about August 10, 2010, Ms. Marshall was admitted to the hospital fearing that she was suffering from a relapse of tuberculosis, which she had been treated for earlier in her life.  Fortunately, the diagnosis ruled out tuberculosis; however, the examination revealed that Ms. Marshall might have developed uterine fibroids.

20.     She was advised that the tumors were likely benign, but they potentially could cause side effects such as anemia.  Nonetheless, Plaintiff did not take any extended time off work and continued to perform at the same high level that she had throughout her tenure at the Company.

21.     In or around November 2010, Ms. Marshall informed Defendant Gurtov of her condition, but explained that at that time she did not fully understand the nature and extent of the condition.  Ms. Marshall advised Defendant Gurtov that she would need to schedule additional doctors' appointments in the coming weeks and months to determine the proper manner of treatment.

22.     Defendant Gurtov expressed frustration over Ms. Marshall's need to miss work for doctors' appointments.  Specifically, she expressed her annoyance with Ms. Marshall when a doctor's appointment forced Ms. Marshall to miss a weekly "Huddle;" that is, a meeting led by Defendant Gurtov with the managers of all of the branches in her district.

23.     Ms. Marshall informed Defendant Gurtov that she had already arranged for another Store Manager to attend the meeting and take notes in her place.  In response, Defendant

Gurtov admonished Plaintiff that, "doctor's appointments are not a legitimate excuse for not knowing what is discussed at the meeting."

24.     Ms. Marshall's medical condition constitutes an impairment of a system of the body resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function; Ms. Marshall had a record of such impairment; and/or Ms. Marshall was regarded as having such impairment.

25.     Her medical condition also constitutes an impairment of a system of the body resulting from anatomical, physiological, genetic or neurological conditions which are demonstrable by medically accepted clinical or laboratory diagnostic techniques; Ms. Marshall had a record of such impairment; and/or Ms. Marshall was regarded as having such impairment.

**Starbucks' Discrimination and Retaliation Against Plaintiff**

26.     In or around early December 2010, Ms. Marshall informed Defendant Gurtov that she would in all probability need a myomectomy -- surgery to remove the uterine fibroids.

27.     After learning that Plaintiff's serious medical condition would require surgery, Defendant Gurtov's attitude toward Ms. Marshall became hostile, repeatedly questioning Ms. Marshall about the date of her surgery, the anticipated length of recovery and the amount of time she would need off from work.

28.     Ms. Marshall informed Defendant Gurtov that she could not answer those questions until she met with a specialist, but hoped it would only be a three week recovery. Defendant Gurtov rolled her eyes and expressed doubt that Ms. Marshall would be able to return to work so quickly, demonstrating a lack of concern for Plaintiff's medical condition and hostility toward providing her with the necessary accommodation.  Rather, Defendant Gurtov

viewed Ms. Marshall's serious medical condition and/or disability as a burden to her and the Company.

29.     On or about December 23, 2010, Defendant Gurtov arrived at the 345 Hudson Store, purportedly to conduct a periodic inspection (these were commonly referred to as Store Plan of Action Visits).  Defendant Gurtov conducted a periodic inspection of all stores within her district and had conducted dozens of such inspections of Ms. Marshall's branches in the past.

30.     Almost immediately, Defendant Gurtov interrogated Ms. Marshall, not about the business of the 345 Hudson Store as was her approach prior to knowing her medical condition, but rather about Ms. Marshall's expected surgery and anticipated medical leave.  Defendant Gurtov made Ms. Marshall feel guilty about her likely need for medical leave and pressured her not to take any time off.

31.     These comments constituted a blatant attempt by Defendant Gurtov to bully Plaintiff into not taking a medical leave that she clearly needed, stating for example:

> "The store cannot operate without you."

> "I'm worried about the store if you can't be here."

> "Your shift leaders cannot run this store without you."

> "Do you really think your shift leaders can get by without you?"

> "What's going to happen if you can't be here for a few weeks?"

> "I would like to hold the store for you, but with how long you are going to be out, I don't know if I can."

32.     Following this conversation, Defendant Gurtov conducted her supposed "inspection" of the 345 Hudson Store.  However, it quickly became clear that this purported

inspection was aimed only at finding a pretextual basis for Ms. Marshall's eventual termination. Defendant Gurtov simply wanted to rid herself of an employee with a serious health condition and/or disability.

33.     Defendant Gurtov immediately reviewed the 345 Hudson Store's Daily Records Book (the "Book"), which she had also reviewed during each of her many previous inspections of Ms. Marshall's stores. Though Store Managers are generally required to make daily bank deposits, many Store Managers occasionally hold bank deposits to the following day if necessary due to staffing issues, the amount of customer traffic in the store, or otherwise for important operational reasons.

34.     Defendant Gurtov was aware that Ms. Marshall occasionally held bank deposits to the following day, as she had reviewed the Book many times before, but had never taken issue with this practice. Moreover, Defendant Gurtov was aware that other Store Managers within her district, and elsewhere within Starbucks, engaged in the same practice.

35.     On this occasion, however, Defendant Gurtov immediately feigned outrage at Ms. Marshall's deposit practices, even though Ms. Marshall had been employing these practices for years with Defendant Gurtov's knowledge and there was no basis from which to conclude at this point that those practices had any negative impact on Starbucks whatsoever. Ms. Marshall did not deny her occasional holding of deposits to the following day and explained to Defendant Gurtov why it was sometimes necessary based on the operational demands of the Store.

36.     Defendant Gurtov belligerently and falsely accused Ms. Marshall of "stealing money" from the Company, a preposterous charge that Ms. Marshall vehemently denied and which Defendant Gurtov eventually conceded was untrue. The confrontation left Ms. Marshall

shaken and upset, particularly as Defendant Gurtov had moments before berated Ms. Marshall with how unhappy she was that Ms. Marshall would likely need a medical leave of absence.

37.    Later that evening, Ms. Marshall attended a Starbucks holiday party. At the party, she discussed her bank deposit practices with a group of her fellow Store Managers under Defendant Gurtov's supervision, all of whom, informed her that they too, on occasion, "floated" bank deposits to the following day when necessary. They uniformly agreed that Defendant Gurtov had never seriously disciplined them for this practice, other than to ask them to limit it as much as possible.

38.    For the next week, Ms. Marshall continued to work at Starbucks, without receiving any discipline or contact from Defendant Gurtov.

**Plaintiff's Unlawful Termination**

39.    On or about December 30, 2010, Ms. Marshall definitively learned that she would require surgery. She promptly informed Human Resources that she would require FMLA leave and filed the necessary paperwork. Starbucks approved her FMLA leave, which commenced on January 5, 2011.

40.    Shortly after the commencement of her leave, Defendant Gurtov hired a new Store Manager from outside of the Company to replace Ms. Marshall at the 345 Hudson Store, rather than transferring someone internally on a temporary basis.

41.    On or about February 21, 2011, Ms. Marshall contacted Defendant Gurtov regarding her expected return to work on March 1, 2011. Defendant Gurtov asked her if she was really going to return to full-time work, or if she was going to need more accommodations. Ms. Marshall responded that she felt healthy and was ready to return to full-time employment.

42.     Defendant Gurtov expressed doubt about whether Ms. Marshall would ever return to full-time employment and asked Ms. Marshall to meet at her office on the morning of her return to discuss her transition back to work.  Defendant Gurtov made no mention of Ms. Marshall's deposit practices or any discipline that was under consideration.

43.     On or about March 1, 2011, Ms. Marshall arrived at Defendant Gurtov's office as scheduled, and was immediately ambushed with attacks regarding her bank deposit practices. Defendant Gurtov unlawfully terminated Ms. Marshall on the spot.  Later that day, Ms. Marshall called the Starbucks Ethics Hotline and complained about her unlawful termination.

44.     Defendants' conduct violated a multitude of legal obligations under the FMLA, NYSHRL and NYCHRL which as caused Plaintiff to suffer substantial damages.  As a result, Defendants are liable to Plaintiff for economic damages, compensatory damages, liquidated damages, punitive damages, and reasonable attorneys' fees and costs.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Interference with Rights Under the Family Medical Leave Act)

45.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

46.     At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA.  At all times relevant herein, Starbucks was and is a "covered employer" within the meaning of the FMLA.  At all relevant times herein, Defendant Gurtov was an "employer" within the meaning of the FMLA.

47.     Defendants were obligated to provide Plaintiff with 12 weeks of leave pursuant to the FMLA and reinstate her to the same or an equivalent position upon her return from approved leave.

48.     Defendants violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's rights by, *inter alia*, (i) threatening her that she would lose her position if she exercised her rights under the FMLA, (ii) failing to reinstate her to the same position or a position equivalent to the position that she occupied prior to her FMLA leave, (iii) terminating her employment immediately upon her return from FMLA leave and (iv) terminating her employment as a method of preventing her from exercising her rights under the FMLA in the future.

49.     As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages, including, but not limited to, wages, salary, employment benefits and/or other compensation denied or lost to Plaintiff by reason of Defendants' unlawful conduct, plus interest, and other equitable relief, including, but not limited to, employment, reinstatement and promotion.

50.     Plaintiff is entitled to an award of liquidated damages as Defendants violated the FMLA, such conduct was not in good faith and there was not a reasonable basis for believing that such conduct was not a violation of the FMLA.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of the Family Medical Leave Act)

51.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

52.     At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA.  At all times relevant herein, Starbucks was and is a "covered employer" within the meaning of the FMLA.  At all relevant times herein, Defendant Gurtov was an "employer" within the meaning of the FMLA.

53.   Defendants were obligated to provide Plaintiff with 12 weeks of leave pursuant to the FMLA and reinstate her to the same or an equivalent position upon her return from approved leave.

54.   Defendants have violated the FMLA by unlawfully retaliating against Plaintiff for exercising rights protected by the FMLA by, *inter alia*, terminating her upon her return to work, subjecting her to an adverse employment action that would reasonably dissuade a reasonable person from exercising rights protected by the FMLA and preventing her from exercising her rights under the FLMA in the future.

55.   As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages, including, but not limited to, wages, salary, employment benefits and/or other compensation denied or lost to Plaintiff by reason of Defendants' unlawful conduct, plus interest, and other equitable relief, including, but not limited to, employment, reinstatement and promotion..

56.   Plaintiff is entitled to an award of liquidated damages as Defendants violated the FMLA, such conduct was not in good faith and there was not a reasonable basis for believing that such conduct was not a violation of the FMLA.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discrimination in Violation of the New York State Human Rights Law)

57.   Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

58.   Defendants have discriminated against Plaintiff in violation of the NYSHRL by denying her equal terms and conditions of employment, including, but not limited to, terminating

her employment from the Company because of her disability, because Defendants regarded her as disabled and/or because of her record of disability.

59.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

60.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering, for which she is entitled to an award of compensatory damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the New York State Human Rights Law)

61.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

62.     Defendants retaliated against Plaintiff for her engagement in protected activities, including, but not limited to, requesting and taking an accommodation for her disability. Defendants' retaliatory conduct includes, but is not limited to, the unlawful termination of Plaintiff's employment.

63.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits for which Plaintiff is entitled to an award of damages.

64.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of the New York State Human Rights Law)

65.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

66.    Defendant Gurtov directly participated in the discriminatory and retaliatory conduct perpetrated against Plaintiff, including, but not limited to, the termination of Plaintiff's employment.

67.    At all relevant times, Defendant Gurtov supervised Plaintiff and/or had the ability to control the terms and conditions of her employment, including, but not limited to, the power to terminate Plaintiff's employment.

68.    Defendant Gurtov knowingly or recklessly aided and abetted the unlawful discrimination and retaliation against Plaintiff in violation of the NYSHRL, including, but not limited to, the termination of Plaintiff's employment on account of her disability and/or in retaliation for Plaintiff's engagement in protected activities.

69.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which Plaintiff is entitled to an award of damages.

70.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression,

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and
emotional pain and suffering for which Plaintiff is entitled to an award of damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Discrimination in Violation of the New York City Human Rights Law)

71.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as
contained in each of the preceding paragraphs as if fully set forth herein.

72.     Defendants have discriminated against Plaintiff in violation of the NYCHRL by
denying her equal terms and conditions of employment, including, but not limited to, terminating
her employment from the Company because of her disability, because Defendants regarded her
as disabled and/or because of her record of disability.

73.     As a direct and proximate result of Defendants' unlawful and discriminatory
conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary
and/or economic damages, including, but not limited to, loss of past and future income,
compensation and benefits, for which she is entitled to an award of monetary damages.

74.     As a direct and proximate result of Defendants' unlawful and discriminatory
conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental
anguish and emotional distress, including, but not limited to, depression, humiliation,
embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain
and suffering, for which she is entitled to an award of compensatory damages.

75.     Defendants' unlawful and discriminatory conduct constitutes a knowing,
malicious, willful and wanton violation of the NYCHRL for which Plaintiff is entitled to an
award of punitive damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION
**(Retaliation in Violation of the New York City Human Rights Law)**

76.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

77.     Defendants have retaliated against Plaintiff for her engagement in protected activities, including, but not limited to, requesting and utilizing an accommodation for her disability.  Defendants' retaliatory conduct includes, but is not limited to, the unlawful termination of Plaintiff's employment.

78.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits for which Plaintiff is entitled to an award of damages.

79.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

80.     Defendants' unlawful and discriminatory conduct constitutes a knowing, malicious, willful and wanton violation of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**(Aiding and Abetting in Violation of the New York City Human Rights Law)**

81.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

82.     Defendant Gurtov directly participated in the discriminatory and retaliatory conduct perpetrated against Plaintiff, including, but not limited to, the termination of Plaintiff's employment.

83.     At all relevant times, Defendant Gurtov supervised Plaintiff and/or had the ability to control the terms and conditions of her employment, including, but not limited to, the power to terminate Plaintiff's employment.

84.     Defendant Gurtov knowingly or recklessly aided and abetted the unlawful discrimination and retaliation against Plaintiff in violation of the NYCHRL, including, but not limited to, the termination of Plaintiff's employment on account of her disability and/or in retaliation for Plaintiff's engagement in protected activities.

85.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which Plaintiff is entitled to an award of damages.

86.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

87.     Defendant Gurtov's unlawful and discriminatory conduct constitutes a knowing, malicious, willful and wanton violation of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants

17

complained of herein violate the laws of the United States, the State of New York and the City of New York;

      B.     An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

      C.     An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory, retaliatory and otherwise unlawful treatment of her, as well as to take such affirmative action, including reinstatement, as is necessary to ensure that the effects of these unlawful employment practices and otherwise unlawful conduct are eliminated and do not continue to affect Plaintiff;

      D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

      E.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

      F.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

      G.     An award of liquidated damages under the FMLA.

      H.     An award of punitive damages in an amount to be determined at trial;

I.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

J.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

K.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: April 13, 2011
       New York, New York

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: _____
       Scott B. Gilly
       David E. Gottlieb

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845

*Counsel for Plaintiff*



**To:**        Serenity Marshall

**From:**    Jennifer Gurtov

**Cc:**        Nancy Murgalo

**Date:**    03/01/11

**Subject:**   Separation Document

Employee's Name: Serenity Marshall

<u>**Statement of Situation**</u>

This serves as a separation document for Serenity Marshall. Her employment at Starbucks is being terminated on 03/01/11 for her admitted falsification of the Daily Records Book of Store 11649 as well as for her admitted breaking company policy in regards to bank deposits, in which on numerous occasions throughout the months of November 2010 and December 2010, she did not bring the store's deposits to the bank daily.

_____       _____
Store Manager                              Date

_____       _____
District Manager                            Date



**Referral Report**

DEFENDANT'S
EXHIBIT
PENGAD 800-631-6989
12-8-11
NO. 32

|  |  |  |  |
|---|---|---|---|
| **Matter ID:** | 082822 | | |
| **Description:** | Allegations of Unfair and Poorly Handled Separation | | |
| | Initiator: Serenity Marshall | | |
| | Subject: Jennifer Gurtov | | |
| | Store #11649 | | |
| **Historical Identifier:** | | | |
| **Organization Unit:** | Hudson & King (11649) | | |
| **Category:** | Partner Relations | **Subcategory:** | Termination |
| **Country:** | United States | **Matter Type:** | Referral |
| **Open Date:** | 3/1/2011 | **Close Date:** | 3/1/2011 |
| **Status:** | Closed | **Present Responsibility:** | No |
| **Disposition:** | Referral to PRO | **Anonymous:** | No |
| **Priority:** | C | | |
| **Segment:** | N/A | | |
| **Source:** | Helpline | **Financial Exposure:** | 0.00 |
| **Local Number:** | 114944720 | **Recovery Amount:** | 0.00 |
| **Manager Involved:** | No | **Initiator Contacted:** | 3/1/2011 |
| | | **Initiator Notified About Process:** | No |
| **How Known:** | Partner Resources | **Topic Tracker:** | N/A |
| **Audit Committee Requested:** | No | **Sarbanes Oxley Reportable:** | No |
| **Attorney Client Privilege:** | No | | |

**Approval**

| | | | |
|---|---|---|---|
| **Approved By:** Kami Norris | | **Approved Date:** 3/1/2011 | |

**Initiators/Witnesses**

| Name | Person Type | External Identifier | Title | Phone Number | Email | Role | Type |
|---|---|---|---|---|---|---|---|
| Marshall, Serenity | Former Partner | 1088330 | Store Manager | (917) 334-8699 | serenitygranted6@yahoo.com | | Initiator |

**Case Managers/Investigators**

| Name | Title | Phone | Case Role | Role | External Identifier | Type | Email |
|---|---|---|---|---|---|---|---|
| Mitchell, Pier | Ethics & Compliance Specialist | (206) 318-7660 | Case Manager | | | Case Manager | pmitchel@starbucks.com |

**Subjects**

| Name | Party Type | Person Type | Title | Job Function | Phone Number | Outcome | Result | External Identifier |
|---|---|---|---|---|---|---|---|---|
| GURTOV, JENNIFER | Individual | Partner | DISTRICT MANAGER | | | | | 282805 |

**Narratives**

| Created | Created By | Type | #Attach | Narrative |
|---|---|---|---|---|
| 3/2/2011 | Norris, Kami | Status | 1 | From: Kami Norris<br>Sent: Tuesday, March 01, 2011 3:51 PM<br>To: Nancy Murgalo<br>Cc: Kami Norris<br>Subject: RE: BEC Referral - CM 082822 / PN 1088330 / Store # 11649<br><br>Hi Nancy ~<br><br>Thank you so much.<br><br>Kindest regards, |
| 3/2/2011 | Norris, Kami | Status | 1 | From: Nancy Murgalo<br>Sent: Tuesday, March 01, 2011 3:37 PM<br>To: Kami Norris |

STAR_MARSHALL0000001

Subject: RE: BEC Referral - CM 082822 / PN 1088330 / Store # 11649

Hi Kami - you may have gotten my out-of-office message, but I was able to reach Serenity this evening and explained the termination to her.

| | | | | |
|---|---|---|---|---|
| 3/1/2011 | Norris, Kami | Closing | 2 | From: Kami Norris<br>Sent: Tuesday, March 01, 2011 2:01 PM<br>To: Nancy Murgalo<br>Cc: Kami Norris<br>Subject: BEC Referral - CM 082822 / PN 1088330 / Store # 11649<br>Importance: High<br><br>Hi Nancy ~<br><br>I hope you are doing well.<br><br>The attached Compliance Matter 082822 is from a recently separated store manager alleging her separation was unfair and poorly handled. Based on these concerns, the report is being forwarded to you for investigation.<br><br>The Compliance Matter will be closed in the BEC case management system and we do not require follow-up from you. If you have received this report in error, please reply to this email with an explanation of why you do not believe this is within the scope of your investigation responsibility.<br><br>Kindest regards, |
| 3/1/2011 | Norris, Kami | Initiator Contact | 0 | On 03/01/11 at 1:55pm, I (Kami Norris) called and spoke with Serenity Marshall. I thanked Serenity for her report, and let her know that based on the nature of her concerns, her report will be forwarded to Partner Resources Manager Nancy Murgalo for investigation. I informed Serenity that Nancy would reach out to her directly. I also encouraged Serenity to call the Business Conduct Helpline back if she had any additional questions or additional information prior to hearing from Nancy. |
| 3/1/2011 | | Call Center Communications | 0 | Call Date: 3/1/2011 2:37 PM |

Caller, MARSHALL, reported on 12/23/10, District Manager, Jen GURTOV came to the location and they sat down to review the Daily Records Book. This is something that they do once every two months or so and the purpose is to review how the store is being run. They duscissed two items that day, one involved MARSHALL taking the deposit to the bank the day after as opposed to the day of the deposit. She was unaware of the policy and explained that sometimes she got very busy and sometimes miss the bank, however, she always made sure the money was counted and secure for deposit the following day when that happened. She has never had any discrepancy with the deposit. The other issue they discussed is that MARSHALL accidentally wrote the wrong date once in the log book (the date was a day off but the deposit slip was accurate). GURTOV advised MARSHALL of how important it was to make sure these issues were addressed and MARSHALL was of the understanding that the issues were correctable, she'd been coached and this was the end of it. GURTOV did not write her up or discipline her in any way other than to provide verbal instruction. MARSHALL worked until 1/4/2011 without any issues then went on an approved leave (FMLA) on 1/5/11 to have surgery. She came back to work on 3/1/11. She returned today and was told to report to the office by GURTOV, who then advised she was being terminated. District Manager, Mike UNKNOWN was present and served as a witness. The separation notice GURTOV presented stated that MARSHALL admitted to falsifying the Daily Log and that she committed cash policy violations. MARSHALL did not sign the form because she did not falsify anything. To falsify implies intent to deceive and she merely recorded the date a day off which is simply human error, no more, no less. MARSHALL contends that making the deposits a day late violated policy but is not the same as mishandling cash. She but was hurt, blind-sided and shocked by GURTOV's actions but had no further dialogue and simply left. MARSHALL has two concerns that she'd like addressed with urgency. She stated that although she did something wrong, she been a Partner for ten years and has never had a violation of any sort. As Store Manager, she could not fire anyone for a first occurrence unless it involved theft. There is a procedure to be followed which involves a warning and series of write ups before termination. Again, she pointed out that she has not been accused of mishandling money, only a policy violation so why does the punishment seem so severe for the infraction. Not to mention, GURTOV allowed her to work for 15 days after they met, then go out for an approved medical leave only to terminate her the first day back from medical leave. The whole issue seems suspicious to her. GURTOV framed the conversation to give the impression that the issues from the December visit was the reason for termination but MARSHALL does not know what to believe. She was basically terminated without any previous documentation of any wrongdoing. She was not even suspended so she does not understand what's going on. The day she met with GURTOV back in 12/10, GURTOV left as she was in the midst of preparing a deposit and saw her handling money at that very moment but said nothing of pending disciplinary action. MARSHALL feels her job should be re-instated immediately. She could have accepted a warning even if it was a last warning for the infractions. She cannot accept the termination without further explanation of her concerns. She is asking to be contacted as soon as possible.

| | | | | |
|---|---|---|---|---|
| 3/1/2011 | | HelpLine Notes | 0 | Client Instructions: No callback arrangements have been made for this individual. The caller has provided his/her name and number indicating an interest in discussing this matter with a company representative. Please contact the caller as soon as possible.<br><br>When Happened: 12/23/10 AND 3/1/11 |

STAR_MARSHALL0000002

Location: Hudson & King
345 Hudson St.
New York, NY 10014 USA

Location Site: AT STORE LOCATION

3/1/2011          HelpLine          0          Question: May I have your partner ID?
                 Questions                    Answer: 1088330

                                              Question: How did you hear about this resource?
                                              Answer: Partner Resources

                                              Question: Name appears as a reported party.
                                              Answer: No Match

                                              Question: If you are age 18 or older, would you be willing to complete a confidential, online
                                              survey describing your experience with the Helpline? If so, research staff from NYU will email
                                              you after your report file has been closed.
                                              Answer: YES

                                              Question: At what e-mail address would you like to be contacted?
                                              Answer: serenitygranted6@yahoo.com

                                              Question: Please enter email address from caller tab.
                                              Answer:

                                              Question: Please enter phone number from caller tab.
                                              Answer:

                                              Question: How was the report information received?
                                              Answer: Phone Call

**Postgraduate Center for Mental Health**
158 East 35th Street
New York, NY 10016

**Earnings Statement**

| | |
|---|---|
| Check Date: | July 22, 2011 |
| Period Beginning: | July 03, 2011 |
| Period Ending: | July 16, 2011 |

**Serenity Marshall**          Employee Number        112437

| | | | |
|---|---|---|---|
| Branch | 0001 | Check Number | 76474 |
| Department | 1605 | Net Pay | 16.90 |
| PCL | PER DIEM | Check Amount | 16.90 |

| Earnings | Rate | Hours | Amount | YTD Hrs | YTD Amt |
|---|---|---|---|---|---|
| Reg | 10.00 | 7.00 | 70.00 | 258.00 | 2926.79 |
| OT (1.5) | | | | 7.00 | 119.77 |
| Retro | | | | | 62.67 |
| **Total Gross Pay** | | **7.00** | **70.00** | **265.00** | **3109.23** |

| Taxes | Status | Taxable | Amount | YTD Amt |
|---|---|---|---|---|
| Medicare | | 18.00 | 0.26 | 42.07 |
| OASDI | | 18.00 | 0.75 | 121.85 |
| New York, NY (Res) | S/1 | 18.00 | | 46.06 |
| Federal Income Tax | S/1 | 18.00 | | 233.25 |
| New York SITW | S/1 | 18.00 | | 70.30 |
| NY Disability - EE | | 18.00 | 0.09 | 4.89 |
| **Total Tax Withholding** | | | **1.10** | **518.42** |

| Deductions | Amount | YTD Amt |
|---|---|---|
| Commutation (s125) | 52.00 | 208.00 |
| **Total Deductions** | **52.00** | **208.00** |

| Direct Deposits | Account | Amount |
|---|---|---|
| **No Direct Deposits** | | |

| Benefits | Hours | Amount | YTD Hrs | YTD Amt |
|---|---|---|---|---|

| Accruals | Hours |
|---|---|
| SKPNU | 0 |
| VACNB | 4 |





DEFENDANT'S
EXHIBIT π°
12-8-11
NO. 33

CONFIDENTIAL

SM 00389

# Gap Inc.

Employee ID: 2226460
Dept: 05762 31 05762          014276-014276

Old Navy, LLC
866/411-2772
850 Cherry Avenue
San Bruno, CA 94066

Taxable Marital Status: S

Exemptions/Allowances    Add'l
  Federal: 01
  Res. NY: 01
  Work NY: 01

## Earnings Statement

Page 001 of 001
Period Beginning:   06/26/2011
Period Ending:      07/09/2011
Advice Date:        07/13/2011
Advice Number:      0013122323
Batch Number:       P20000001431

SERENITY F MARSHALL
1964 Grand Concourse #1e
Bronx, NY 10457



DEFENDANT'S
EXHIBIT
12-8-11 TF
NO. 34

| Earnings | Rate | Hours | This Period | Year-to-Date |
|---|---|---|---|---|
| Straight Tim | 25.0000 | 64.00 | 1600.00 | 8900.00 |
| Paid Time Of | 25.0000 | 8.00 | 200.00 | 700.00 |
| Holiday Fixe | 25.0000 | 8.00 | 200.00 | 400.00 |
| Group Term L | 1.0000 | 0.08 | 0.08 | 0.36 |

| Other Benefits and Information | This Period | Year-to-Date |
|---|---|---|
| **Leave Summary** | | **Balance** |
| PTO/Vac Balance | | 3.4- |

| Gross Pay | 80.08 | 2000.00 | 10000.00 |
|---|---|---|---|

## Tax Deductions

| | This Period | Year-to-Date |
|---|---|---|
| Fed Withholding | 286.65 | 1434.99 |
| Fed MED/EE | 28.51 | 142.63 |
| Fed OASDI/EE | 82.57 | 413.13 |
| NY Withholdng | 98.38 | 492.38 |
| NY OASDI/EE | 1.20 | 6.00 |
| NY NEW YORK Withholdng | 58.48 | 292.67 |
| Total Tax Deductions | 555.79 | 2781.80 |

## Direct Deposit Summary

| Trans | Type | Account | Amount |
|---|---|---|---|
| Deposit | **6884 | | 1,407.65 |
| Net Check | | | 0.00 |

## Additional Deductions

| | This Period | Year-to-Date |
|---|---|---|
| United Health Medical - PT | 25.85 | 122.32 |
| Delta Dental - PT | 5.08 | 25.40 |
| Supp Vision - PT | 3.23 | 16.15 |
| Supplemental Life | 2.40 | 12.00 |
| Total Additional Deductions | 36.56 | 175.87 |
| *Excluded From Taxable Wages | | |
| Net Pay | 1407.65 | 7042.33 |

| Federal Taxable W | $1,965.92 | $9,836.49 |
|---|---|---|

Go paperless!
Help the environment!
Get your pay stub on-line.
Call Gap Inc.
1-866-411-2772

©1998, 2005, ADP, Inc. All Rights Reserved.

© 2000 Automatic Data Processing, Inc. (PCSA-0001)

TEAR HERE

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

# Gap Inc.

Old Navy, LLC
866/411-2772
850 Cherry Avenue
San Bruno, CA 94066

Advice Number:  0013122323

Advice Date:    07/13/2011

| Deposited to the account of | | Account Number | Transit-ABA | Amount |
|---|---|---|---|---|
| SERENITY F MARSHALL | Checking | **6884 | 021000089 | 1407.65 |

THIS IS NOT A CHECK

**NON-NEGOTIABLE**

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT

# Fiscal Year 2010

## Old Navy Store Management Field Incentive Plan

### Overview

This plan document details eligibility requirements, incentive plan components and plan policies. Sample calculations are also included to illustrate how quarterly incentive payouts are earned and calculated.

### Who is Eligible

Store Management / Field Leaders, full and part time, in a FIP eligible position (see list below).

| Tier 1 Leader | | Tier 2 Leader | | Tier 3 Leader | |
|---|---|---|---|---|---|
| Job Code | Job Title | Job Code | Job Title | Job Code | Job Title |
| 01292 | Store Manager | 00276 | Assoc Store Mgr | 02952 | Logistics Supervisor |
| 01301 | Store Manager | 01305 | ASM – Service/Ship & Replenishment | 00508 | Shipment Manager |
| | | | | 03016 | Merchandising Manager |
| 01303 | Mgr Operations Flagship | 02734 | Store HR Manager | 02953 | Customer Service Supervisor Service & Training Mgr (Core Store) |
| | | 03014 | ASM - Merchandising | | |
| | | 03015 | ASM – Service & Ops | | |
| 01306 | Mgr Flagship HR | 02950 | Logistics Manager | 02985 | Supervisor |
| 01307 | Mgr Flagship Loss Prevention | 02951 | Customer Service Mgr | 03017 | Customer Experience Supervisor Operations Mgr (Core Store) |
| 01309 | Visual Merchandise Mgr | 02134 | Store Merchandise Mgr Asst Store Mgr- Merchandising (Core Store) | 03017 | Customer Experience Supervisor Operations Mgr. (Core Store) |
| | | 04203 | Manager Operations | 03250 | Hiring & Training Mgr |

*NOTE: Job Codes apply to all Gap Inc. brands. Job titles are Old Navy specific business titles. Managers in Training or Unassigned are not eligible to participate in the Field Incentive Program until successful completion of their initial training and assignment to store.*

Employees may become eligible to participate when they are hired or promoted in to an eligible position. Changes of store, district, position, or employment status will induce a pro-ration event.

To be eligible to receive and incentive pay out, you **must** be with Gap Inc. on the last day of the performance period. **Gap Inc. retains the sole discretion to determine eligibility.**

The quarterly performance periods are as follows:
- 1st Quarter: January 31, 2010 – May 1, 2010
- 2nd Quarter: May 2, 2010 – July 31, 2010
- 3rd Quarter: August 1, 2010 – October 30, 2010
- 4th Quarter: October 31, 2010 – January 29, 2011

Payments are processed and paid by the 4th fiscal week of the month following the fiscal quarter close. Actual payout dates may vary based on pay cycle.

### About Old Navy FIP

The Old Navy Field Incentive Plan (FIP) is intended to:



DEFENDANT'S
EXHIBIT $\overline{TV}$
12-8-11
NO. 35
PENGAD 800-631-6989

CONFIDENTIAL

SM 00395

# Fiscal Year 2010

## Old Navy Store Management Field Incentive Plan

- Reward exceptional store financial performance
- Reward performance against Performance Planning and Assessment (PP&A) metrics
- Reward achievement of store / district goals
- Support our company's pay for performance philosophy

As a Old Navy FIP participant, you have the potential to receive a quarterly incentive award in addition to your base salary. For exceptional performance, there is the potential for exceptional award. If goals are not met, the plan may not pay out at all.

## How Old Navy FIP Works

Incentive awards are determined on a fiscal quarter basis. You are assigned an incentive target, which is expressed as a percent of your quarterly base salary (subject to award adjustments described below). Employees who participate in the Old Navy FIP will have the following incentive targets as a percent of quarterly base salary:

| Level | Incentive Target | Maximum |
|-------|------------------|---------|
| Tier 1 Leader | 12% | 24% |
| Tier 2 Leader | 9% | 18% |
| Tier 3 Leader | 7% | 14% |

Please refer to "How Old Navy FIP is Calculated" for more details.

**Large Volume Stores (>$20 million)**
The Head of Store (HOS) in a >$20 million store is considered to be a Store Director and their quarterly incentive target will be 17% of their quarterly base salary as part of the District Manager Field Incentive Plan. The other leaders in >$20 million stores will also be eligible for a higher incentive target. The additional target amount is a flat dollar figure, which will vary by level.

The Large Volume Store FIP targets are as follows:

| Level | Quarterly Target |
|-------|------------------|
| Store Director (HOS)* | 17% of quarterly base salary |
| Tier 1 Leader (reporting to Store Director) | 12% of quarterly base salary + $1,000 |
| Tier 2 Leader | 9% of quarterly base salary + $800 |
| Tier 3 Leader | 7% of quarterly base salary + $300 |

*Eligible for DM FIP. See DM FIP document details.*

Budgeted store sales goals are reviewed on an annual basis to determine stores eligible for the additional target amount. Eligible stores are identified at the beginning of each fiscal year based on store budget and will not be adjusted mid-year.

CONFIDENTIAL

SM 00396

# Fiscal Year 2010

## Old Navy Store Management Field Incentive Plan

For example, if a store that has a budget below $20 million outperforms and has actual revenue of $20 million or more at the end of the fiscal year, the leaders will **not** be eligible for the additional incentive amounts retroactively.

Two key components determine your Old Navy FIP incentive award. They are:

- **Financial Component** (50% of total target incentive opportunity)
  The measure for the financial component is based on store Controllable Contribution. As a Store Manager participant, this financial component will be measured at the store level. Achievement of threshold Controllable Contribution is required for payout on the financial component. Payout for the financial component will be between 0-200% of the target amount for this component (see **Controllable Contribution** metric table in appendix).

- **Individual Component** (50% of total target incentive opportunity)
  The individual component of your bonus is based on two factors: your performance against your PP&A store metrics and your performance against key business goals[1]. Your store's achievement against its Key Business Goal will be determined at the end of each quarter. At that time, your store will receive a Key Business Goal Achievement Score of 0-100%. The Key Business Goal Achievement Score, in combination with your performance rating[2], as determined through our PP&A process, will determine the payout for the individual component of your bonus (see **Key Business Goals** and **PP&A** metrics tables in appendix).

  [1] *US Key Business Goals = ONC Performance. Canada Key Business Goal = CIC Performance*

  [2] *Individual Performance Rating: BT=0%, OT=100%, AT=150%, SAT=200%*

## FY10 Old Navy FIP Performance Measures



PP&A Rating

Key Business Goal Attainment

Individual Component 50%

Financial Component 50%

Store Controllable Contribution: 100%

CONFIDENTIAL

SM 00397

# Fiscal Year 2010

## Old Navy Store Management Field Incentive Plan

### How Old Navy FIP is calculated

Your incentive award is calculated in four steps. These steps and an example are shown below. The example is based on the following assumptions:

| Employee Name: | John Doe |
|---|---|
| Position: | Store Manager |
| Annual Base Salary: | $50,000 |
| Quarterly Base Salary (Annual Salary x 25%): | $12,500 |
| Incentive Target % for Tier 1 Leader: | 12% |
| Performance Rating: | Above Target (150%) |
| Key Business Goal Achievement (0-100%): | 90% |
| Financial Component Achievement: | 100% |

**Step 1:** Determine the quarterly payout for the individual component portion of your bonus.

**Step 2:** Determine the quarterly payout for the financial component portion of your bonus.

**Step 3:** Add the payouts from both the individual component and the financial component to determine your total quarterly bonus payout.

| Individual Component (50%) | | Financial Component (50%) |
|---|---|---|
| **Target Amount for Individual Component: $750**<br>Half of Total Bonus Target Amount<br>50% x 12% x 12,500 | | **Target Amount for Financial Component: $750**<br>Half of Total Bonus Target Amount<br>50% x 12% x 12,500 |
| **PP&A Rating: 150%**<br>Based on overall achievement of objectives and job performance during the year.<br>(BT=0%; OT=100%; AT=150%; SAT=200%) | | **Financial Performance (0-200%):   100%**<br>Based on performance against Store Controllable Contribution targets. |
| **Business Goal Achievement: 90%**<br>Performance against Key Business Goal<br>    US Key Business Goal = ONC Performance<br>    Canada Key Business Goal = CIC Performance | | |
| **Final Individual Component Payout = $1,012.50**<br>$750 x 150% x 90% | | **Final Financial Component Payout = $750**<br>$750 x 100% |
| **Individual Component + Financial Component = Final Bonus = $1,762.50** | | |

CONFIDENTIAL

SM 00398

# Fiscal Year 2010

## Old Navy Store Management Field Incentive Plan

### Award Adjustments and Limitations

Old Navy FIP awards are earned and accrued for the Financial Component only if the threshold controllable contribution goal applicable to your store (see appendix) is achieved for the fiscal quarter. Old Navy FIP awards are earned and accrued for the Individual Component only if your performance rating (as determined by Gap Inc.) for that quarter is On Target or higher and key business goal achievement score is greater than zero.

**Pro-Ration:** Awards will be adjusted based on employment status and time in position/location during the performance period. For example, if you are promoted or change jobs during the performance period, the ON FIP award will be prorated based on the position/location, salary, and applicable financial goals. Time spent on any type of Leave of Absence will not be included in bonus calculations.

**Acting Manager:** If an Acting Manager assignment involves a store manager becoming responsible for multiple stores, their Field Incentive will be based **only** on their home store. They will also be eligible to receive a separate Acting Manager bonus for their time overseeing multiple locations. Please reference the Acting Manager Bonus Plan document applicable to your brand for program details.

**New Stores:** the total number of days open for selling is the total days eligible, so an employee who works in a store for 21 days and the store was open only 21 days receives 21 / 21 days.  If the employee works 7 days out of the month, the employee is eligible for 7 / 21 days.

**Part-Time Manager:** Any earned Field Incentive awards for part-time managers will be prorated by 50%.

**Corrective Action:** Employees placed on a written, performance-related corrective action will not be eligible to receive an incentive for the quarter they are placed on the corrective action.

Members of the Gap Inc Compensation Leadership Team may exercise discretion to modify the final award amount. Taxes will be withheld from Gap FIP awards at the time of the payment.

### If You Leave Gap Inc.

Old Navy FIP is intended to reward current employees for On Target or better performance and continued service with Gap Inc. Therefore, bonuses are only earned and accrued on the final day of the incentive period and you must be employed by Gap Inc. on that date to be eligible to receive an award. Note that Gap Inc. reserves the right to rescind or modify any award if employees are terminated for reasons that include, but are not limited to, serious misconduct.  If you leave during a plan year and are subsequently rehired by Gap Inc. your bonus eligibility will be determined by your rehire date.

### Questions

If you have questions regarding Old Navy FIP, please contact your manager or HR Business Leader.

### About this Plan Summary

*This plan summary provides an overview of the provisions of the Old Navy Field incentive Plan (Old Navy FIP). Gap Inc. reserves the right in its discretion, to review, change, amend or discontinue the plan at any time, with or without prior notice. In the event of any inconsistency with other communications about the plan, written or verbal, this plan summary will prevail. The language in this plan summary does not constitute a guarantee of employment with Gap Inc.*

CONFIDENTIAL

# Fiscal Year 2010

## Old Navy Store Management Field Incentive Plan

### Appendix – Payout Scales

**Controllable Contribution**

| % Variance to Budget | Payout % |
|---|---|
| +20% or more | 200% |
| +15% - 20% | 175% |
| +10% - 15% | 150% |
| +5% - 10% | 125% |
| +0% - 5% | 100% |
| +2% - 0% | 50% |
| -2% or less | 0% |

**Store PP&A Rating**

| Score | Rating | Payout % |
|---|---|---|
| 90 – 100 points | SAT | 200% |
| 75 – 89 points | AT | 150% |
| 35 – 74 points | OT | 100% |
| < 35 points | BT | 0% |

**Key Business Goals**

| US Stores – ONC Brand Goal | | Canada Stores – CIC | |
|---|---|---|---|
| % to Goal | Payout % | % to Goal | Payout % |
| 130% or more | 100% | 175% or more | 100% |
| 120% - 129.9% | 90% | 150% - 174.9% | 90% |
| 110% - 119.9% | 80% | 125% - 149.9% | 80% |
| 100% - 109.9% | 70% | 100% - 124.9% | 70% |
| 94% - 99.9% | 60% | 95% - 99.9% | 60% |
| 86% - 93.9% | 50% | 90% - 94.9% | 50% |
| 78% - 85.9% | 40% | 85% - 89.9% | 40% |
| 70% - 77.9% | 30% | 80% - 84.9% | 30% |
| Less than 70% | 0% | 75% - 79.9% | 20% |
| | | 70% - 74.9% | 10% |
| | | Less than 70% | 0% |

CONFIDENTIAL





April 19, 2011

Serenity F. Marshall
1964 Grand Concourse #1E
Bronx, New York 10457

Dear Serenity:

It is our pleasure to offer you a position at Gap Inc. We're a company driven by passion, innovation and a focus on quality – the same characteristics we look for in our employees. You reflect these values and we feel confident you will find rewarding opportunities with us.

This letter sets forth our offer to you to join Gap Inc. as Assistant Store Manager of Service & Operations in Old Navy, Bay Plaza – Bronx,New York. In this position you will report to, Janira Lopez, Store Manager.

**Salary.** Your hourly rate of pay will be $25.00 ($52,000 annually based on a 40 hour workweek), payable every two weeks. You are scheduled to receive a performance and a compensation review in March 2012, based on your time in the position.

**Incentive Bonus.** Based upon your position as Assistant Store Manager of Service & Operations , you are eligible to participate in the Field Incentive Plan (FIP). This plan provides rewards for achievement of specific business metrics in your area of responsibility. Details of the Field Incentive Plan for which you are eligible can be found in the accompanying plan incentive document. Eligibility for the program and the program itself is subject to change at any time.

**Benefits.** Gap Inc. offers a competitive benefits package designed to assist you in securing your financial future and managing your work and personal life. In addition to medical, dental, vision, life and income protection, you are eligible for Gap Inc.'s LifeStyle Benefits which include an Employee Assistance Program, home loan services and tuition reimbursement. Gap Inc. also offers an Employee Stock Purchase Plan, a 401(k) plan with a generous dollar for dollar company match up to four percent of your pay (limited as provided in the plan), and employee discounts toward merchandise you purchase in our stores as gifts, or for yourself and your eligible dependents. You will be eligible for Paid Time Off on an annual basis in addition to six Company–paid holidays. PTO accrues each pay period based on regular hours paid, and can be used for vacation, illness or personal business. Please refer to www.gapincbenefits.com/info for more information on Gap Inc.s benefit programs.

**Start Date.** Your first day with the Company will be on May 2, 2011. Please bring identification and proof of authorization to work in the U.S. In order for you to sign up for direct deposit or electronic pay, it is best if you also bring your bank account information (i.e. a voided check, deposit slip or your account number and the bank's routing number) on your first day. If you have questions about documentation, contact Employee Services at 1–866–411–2772 x20600.

**No Conflicts with this Offer/Representations.** You represent and warrant that you do not have any agreements, obligations, relationships or commitments to any other person or entity that conflicts with accepting this offer or performing your obligations of this position. You further represent that the credentials and information you provided to Gap Inc. (or its agents) related to your qualifications and ability to perform this position are true and correct.

**Proprietary Information or Trade Secrets of Others.** You agree that prior to your first day of employment with Gap Inc. you will return all property and confidential information, including trade secrets, belonging to all prior employers. You further agree that you will not disclose to us, or use, or persuade any Gap Inc. employee to use, any proprietary information or trade secrets of another person or entity.

**Abide by Company Policies/Protection of Gap Inc. Information.** You agree to abide by all Gap Inc. policies including, but not limited to policies contained in the Code of Business Conduct.

**Employment Status.** You understand that your employment is "at–will". This means that you do not have a contract of employment for any particular duration or limiting the grounds for your termination in any way. You are free to resign at any time. Similarly, Gap Inc. is free to terminate your employment at any time for any reason. The only way your at–will status can be changed is if you enter into an express written contract with Gap Inc. that contains the words "this is an express contract of employment" and is signed by an officer of Gap Inc. In the event that there is any dispute over the terms, enforcement or obligations in this letter, the prevailing party shall be entitled to recover from the other party reasonable attorney fees and costs incurred to enforce any agreements.

**Please review your agreement.** You may keep this copy for your personal records. This offer may be withdrawn at any time prior to your acceptance.

Serenity, it is our pleasure to extend this offer. We look forward to working with you.

550 Terry Francois Street
San Francisco, CA 94158

CONFIDENTIAL

SM 00393

Your sincerely,

Lyndsay Aurrecoechea, Zone Recruiting Manager

Confirmed this 19 day of April , 2011

_____
Serenity F. Marshall

CONFIDENTIAL

SM 00394

**Subject:**   RE: Update

**From:**   Serenity Marshall (serenitygranted6@yahoo.com)

**To:**   Lyndsay_Aurrecoechea@gap.com;

**Date:**   Wednesday, March 30, 2011 1:41 PM



Hi Lyndsay,

Thank you for the update.  Attached is my updated resume.  Have a great rest of the week!

Serenity

--- On **Fri, 3/25/11, Lyndsay Aurrecoechea <*Lyndsay_Aurrecoechea@gap.com*>** wrote:

> From: Lyndsay Aurrecoechea <Lyndsay_Aurrecoechea@gap.com>
> Subject: RE: Update
> To: "Serenity Marshall" <serenitygranted6@yahoo.com>
> Date: Friday, March 25, 2011, 2:35 PM
>
> I have asked DM Jeff Chin to reach out to you for the next steps.
>
> **Lyndsay Aurrecoechea**
> Zone Recruiting Manager | Eastern Zone
> Gap Inc. | Old Navy Division
> 'PHONE | CELL:  631.434.5545 6 FAX: 212.658.9102
>
>
> **From:** Serenity Marshall [mailto:serenitygranted6@yahoo.com]
> **Sent:** Monday, March 21, 2011 10:40 AM
> **To:** Lyndsay Aurrecoechea
> **Subject:** Re: Update
>
> Hello Lyndsay,
>
> I am available anytime Tuesday, Wednesday and Thursday. I am also available on Friday but only before 2pm due to a previous engagement.
>
> Serenity Marshall
> serenitygranted6@yahoo.com
>
> --- On **Thu, 3/17/11, Lyndsay Aurrecoechea <*Lyndsay_Aurrecoechea@gap.com*>** wrote:
>
> From: Lyndsay Aurrecoechea <Lyndsay_Aurrecoechea@gap.com>
> Subject: Update

CONFIDENTIAL

SM 00452

http://us.mg1.mail.yahoo.com/neo/launch?.rand=bthk675ul1uvr

To: "serenitygranted6@yahoo.com" <serenitygranted6@yahoo.com>
Date: Thursday, March 17, 2011, 6:53 PM

Hi there, I would like to set you up to speak with the team in more depth. How is your availability?

**Lyndsay Aurrecoechea**
Zone Recruiting Manager | Eastern Zone
Gap Inc. | Old Navy Division
'PHONE | CELL:  631.434.5545 6 FAX: 212.658.9102

  

**Click here to get a glimpse of Gap Inc's Culture:**





11/28/2011 6:40 PM

CONFIDENTIAL                                              SM 00453

Serenity Marshall
1964 Grand Concourse #1E
Bronx, NY 10457

Serenitygranted6@yahoo.com    Cell: 917-334-8699

Dedicated store manager with 7+ years of experience in customer service management, retail and food service settings. Consistently achieved high customer satisfaction rankings, improvements to the bottom line and turnaround of underperforming operations.
Respected builder and leader of customer-focused teams. Instills a shared, enthusiastic commitment to customer service as a key driver of company goal attainment. Leads by example and ensures the execution of all safety, security, quality and store operations policies.

Areas of Expertise

*Customer Service Management      *Customer Recovery Solutions
*Retail Operations Management      *Customer Satisfaction Enhancement
*Visual Presentation Strategies       *Sales & Margin Improvement
*Hiring, Teambuilding & Training     *Cost-Reduction Strategies


Professional Experience

Post Graduate Center for Mental Health- New York, NY     3/11- present
Counselor, 3/11- present

Counsel with emphasis on prevention. Work with individuals and groups to promote optimum mental health. Analyze information and evaluate results to choose the best solution and solve problems.

Selected Contributions:

*Run workshops and courses about mental health issues.
*Prepare and maintain all required treatment records and reports.
*Guide clients in the development of skills and strategies for dealing with their problems.
*Evaluate clients' physical or mental condition based on review of client information.
*Monitor clients' use of medications.

Starbucks Coffee Company - New York, NY     5/02 to 3/11
Store Manager, 11/04 to 3/11
Assistant Store Manager, 6/03 to 11/04
Shift Supervisor, 8/02 to 6/03
Barista, 5/02 to 8/02

CONFIDENTIAL                                                                          SM 00454

Promoted to manager position to recruit, train and supervise 30+ partners (employees). Set the example of how to consistently exceed customer expectations through a relentless focus on the customer and understanding what the customer wants and how to best deliver the experience. Continuously sought opportunities to improve self and others through a commitment to hire, coach and develop partners to achieve their potential by leading and empowering in a positive manner. Accountable to prioritizing and delivering quality results and ensuring financial contributions were maximized. Exercised independent judgement and discretionary powers in the day-to-day performance of job duties, and ensured all policies were implemented and maintained in a consistent manner.

Selected Contributions:

*Awarded "Manager of the Quarter" in 2006 for achievement of sales goals, a perfect score on "Customer Snapshots" (mystery shopper program) and leadership role in community involvement initiatives.
*Became a certified MCM (manager-coach-mentor) for external RMT (retail management trainee) candidates and successfully led three trainees through an intensive twelve week program.
*Managed two locations simultaneously for over a month during a peer's absence.
*Appointed district lead on numerous occasions while district manager was unavailable.
*Promoted from a Level I to Level II store in 11/05 after removing lower volume store from the "red-line" listing by increasing sales and total contribution to bottom line.
*Exemplified the second-to-none customer service delivery for which Starbucks Coffee is internationally renowned in all interactions with customers.
*Promoted fifteen baristas to shift supervisors, seven shift supervisors to assistant store managers and two assistant store managers to store managers.

—

Education

City College - New York, NY    2/98 to 5/03
    Earned BA in English

Training

 Completed numerous courses and seminars in customer service, sales strategies, inventory control, loss prevention, time management, leadership, performance assessment and food safety including but not limited to Situational Leadership, Increasing Human Effectiveness, Servant Leadership and the Franklin Covey Organizational Workshop.

CONFIDENTIAL

Print                                                    http://us.mg1.mail.yahoo.com/neo/launch?.rand=bthk675ul1uvr

**Subject:**   Re: FAW Financial Aid steps & process for The University of Phoenix

**From:**   Serenity Marshall (serenitygranted6@yahoo.com)

**To:**   Daniel.Zufelt@phoenix.edu;

**Date:**   Tuesday, March 8, 2011 12:58 PM

Hi Daniel,

I was informed yesterday that due to my extended FMLA I was no longer employed by Starbucks. As a result I am applying for unemployment and do not expect to begin a job search for at least several months.

I will need to put this entire process on hold for now.  When circumstances change for the better I will reach out to you again.

Thanks for your help,

Serenity Marshall



DEFENDANT'S
EXHIBIT/ P
12-8-11
NO. 38
PENGAD 800-831-6989

--- On **Thu, 3/3/11, Daniel Zufelt <*Daniel.Zufelt@phoenix.edu*>** wrote:

> From: Daniel Zufelt <Daniel.Zufelt@phoenix.edu>
> Subject: FAW Financial Aid steps & process for The University of Phoenix
> To: "serenitygranted6@yahoo.com" <serenitygranted6@yahoo.com>
> Date: Thursday, March 3, 2011, 6:55 PM
>
> # Hello Serenity,
>
> In order to process your 2010/2011 Financial Aid application in a timely manner, you will need to provide the FA application so here are the instructions on how to complete the FA application process for your enrollment.
>
> ## 1)  Financial Aid Web Application (20 Min)
> **DO THIS WITH DANIEL**
> - o   ***This application requires Internet Explorer***
>   - §   (Firefox, Netscape & AOL Browsers are <u>not compatible</u> with this application)
> - o   Visit: https://faw.phoenix.edu
> - o   Login with your Username & Password
> - o   Click on Apply for Financial Aid
> - o   Click on Have Already Applied for a Pin
> - o   Complete your Personal Information

CONFIDENTIAL                                                                              SM 00435

o    Questions
    §    Types of Federal Aid (Yes, Loans & Grants)
    §    Maximum Loan Amount (Leave Blank)
    §    Unsubsidized Student Loans (Do Not Check)
    §    Other Financial Assistance (Enter in Other Assistance if Any)
    §    Authorization to Apply Funds (You must select "Yes" for all)
o    E-Sign Your Application
·    Agree to all University Policies

## 2) Entrance Counseling

Visit: www.**studentloans**.gov

·    Agree to <u>Entrance Counseling</u>
(If you have any Questions Please Call)

·    *<u>E-Sign MPN</u>* with Direct Loan Lender

    § Confirm your personal information

Enter two(2) References (people you know)
    §    E-Sign with Preferred Lender
        ·    Complete and e-Sign Lenders Website
        ·    Print Confirmation Page

## 4) FAFSA Application (20 Min)
o    Visit: https://www.fafsa.ed.gov
o    Click "Fill out a FAFSA"
o    Select **2010-2011 FAFSA**
o    E-Sign with your Pin
o    Answer All Questions
    §    What Degree?
    §    Grade Level?
    §    Enrollment Status? (Full Time Students)
    §    Work Study or Student Loans? (Student Loans)
    §    **\*If you are asked to answer questions about Parents Select "No"**
    §    Answer All Financial & Tax Questions ( use 2009 tax returns )
    §    Enter School Code 014593 – *Off Campus*
    §    Electronically Sign with your Pin
    §    Print Confirmation Page and email me your Expected Family Contribution (EFC) score.

**ü  Call me at 1-800-366-9699 Ext. 3872575 and inform me you have finished!**

**Daniel Zufelt,** Senior Enrollment Counselor

CONFIDENTIAL

SM 00436

University of Phoenix  |  Online Campus
3157 E. Elwood St.  |  Phoenix, AZ 85034
Phone: 800-366-9699 Ext.3872575
Direct: 602-387-2575
Fax:    602-643-4863
Email: Daniel.Zufelt@phoenix.edu

---

This message is private and confidential. If you have received it in error, please notify the sender and remove it from your system.

CONFIDENTIAL

SM 00437

NEW YORK STATE DEPARTMENT OF LABOR

UNEMPLOYMENT INSURANCE

ADMINISTRATIVE LAW JUDGE SECTION

==========================================================

In the Matter of the Liability for
Unemployment Insurance Contributions
Under Article 18 of the Labor Law of:

                    Serenity F. Marshall
                    Claimant

                    Starbucks Corporation
                    Employer
Colleen C. Gardner,
Commissioner of Labor
                                        :

==========================================================

                    Case No:  011-11691
                    Appeal Board No.:  None


Date of Hearing:  May 9, 2011

Place of Hearing:  Manhattan, New York

Before:                    Susanna Iafrate,
                           Administrative Law Judge

Transcribed by:            Wanda Henry
Appearances:

            Clt:  Serenity F. Marshall
        Clt Rep:  David Gottlieb, Esquire
            Emp:  Starbucks Corporation
        Emp Rep:  No Appearance by Employer
         Others:



DEFENDANT'S
EXHIBIT 77
12-8-11
NO. 39

1

STAR_MARSHALL0008888

1       Case Duly Called

2               ALJ IAFRATE:   I'm on the record.   This

3       is a hearing in the matter of Serenity Marshall,

4       ALJ Case No. 011-11691.   The hearing is being

5       held in New York City on Monday, May 9th, 2011.

6       The hearing was scheduled for 1:15; the time now

7       is 1:50.   Present at today's hearing is the

8       claimant, Serenity F. Marshall. 'Representing the

9       claimant is David E. Gottlieb.   The employer has

10      not appeared.   A representative of a claimant may

11      not charge a fee unless the claimant prevails,

12      and then only upon application to the

13      unemployment insurance appeal board and approval

14      by the board of a fee.   Any claimant who has paid

15      or has been charged a fee, prior to approval of

16      the appeal board, should immediately bring this

17      to the attention of the court.   My name is

18      Susanna Iafrate; I am the administrative law

19      judge assigned to hold this hearing.   I am

20      independent of the representatives of the

21      commissioner of labor who issued the initial

22      determination which disqualified the claimant for

23      misconduct, effective January 6, 2011, and that

24      was based upon the following reason.   You were

25      discharged by Starbucks Corporation on March 11,

STAR_MARSHALL0008889

1      Case Duly Called

2      2011 after you returned from an approved family

3      medical leave act, for multiple cases of

4      falsification of bank records.  Although you

5      state that you made a one-time error, your former

6      employer provided document showing you had

7      falsified the bank deposit dates several times.

8      Falsifying company documents, a violation of your

9      employer's policies, is misconduct for the

10     purposes of unemployment insurance.  The hearing

11     will proceed in the following manner.  I will

12     take the testimony of all parties and witnesses

13     under oath or affirmation.  After each party or

14     witness testifies, I will offer each other party

15     an opportunity to cross-examine by asking

16     questions.  Since the employer has not appeared,

17     there will be no cross-examination today.  All

18     parties may present witnesses, records, and other

19     documents, which are important to their cases or

20     request that witnesses, records, and documents be

21     subpoena if they are otherwise unavailable.  I'll

22     start by taking testimony from Ms. Marshall.

23     Once I've completed her testimony, I will give

24     Mr. Gottlieb an opportunity to question her on

25     direct examination.  Then I will take a closing

Marshall-05-09-11                          3

STAR MARSHALL0008890

1    Case Duly Called        :

2    statement from each side.  Ms. Marshall, please

3    spell your first name, your last name, and give

4    your correct address.

5        MS. MARSHALL:  I'm Serenity, S-E-R-E-N-

6    I-T-Y, Marshall, M-A-R-S-H-A-L-L.  My address is

7    1964 Grand Concourse, Apartment 1-E, Bronx, New

8    York 10457.

9        ALJ IAFRATE:  And Mr. Gottlieb, spell

10    your first name and your last name, give the name

11    of the firm, and the correct address.

12        MR. GOTTLIEB:  David Gottlieb.  D-A-V-I-

13    D, G-O-T-T-L-I-E-B.  Thompson, Wigdor, and Gilly,

14    85 5th Avenue, New York, New York 10003.

15        ALJ IAFRATE:  Do you have any questions

16    about how the actual hearing will proceed?

17        MS. MARSHALL:  No.

18        ALJ IAFRATE:  I'm asking you, Mr.

19    Gottlieb.

20        MR. GOTTLIEB:  No, I do not.

21        ALJ IAFRATE:  Are you ready to proceed

22    with the hearing?

23        MR. GOTTLIEB:  Yes, we are.

24        ALJ IAFRATE:  Okay.  Ms. Marshall,

25    please raise your right hand.  Do you swear or

STAR MARSHALL0008891

1    Marshall Witness

2    affirm that the testimony you are about to give

3    will be the truth, the whole truth, and nothing

4    but the truth, so help you God?

5         MS. MARSHALL:  Yes.

6         Ms. Marshall, having been duly sworn,

7    testified as follows.

8         ALJ IAFRATE:  You have to speak loud

9    enough for it to record on the recording device.

10        MS. MARSHALL:  Yes.

11   BY ALJ IAFRATE:

12        Q.   You can put your hand down.  Please

13             state your name for the record.

14        A.   Serenity Marshall.

15        Q.   And did you work for a company called

16             Starbucks?

17        A.   Yes.

18        Q.   And what kind of company is that?

19        A.   A retailer, specialty coffee.

20        Q.   A retail specialty coffee company?

21        A.   Yes.

22        Q.   And what was your position there?

23        A.   Store manager.

24        Q.   When did you begin working there?

25        A.   Approximately May 2002.

Marshall-05-09-11                              5

STAR_MARSHALL0008892

```
 1        Marshall Witness
 2            Q.   And what was your last day of work that
 3                 you physically went in and performed
 4                 some services for this employer?
 5            A.   January 5th, 2011.
 6            Q.   January 5th, 2011, for the record would
 7                 have been a Wednesday.  That sound
 8                 correct?
 9            A.   No.
10            Q.   There's a 2011 calendar over there.
11            A.   January 4th.
12            Q.   2011?
13            A.   Yes.
14            Q.   Which would have been Tuesday.
15            A.   Yes.
16            Q.   What were normal days and hours that you
17                 worked?
18            A.   Monday through Friday, approximately
19                 7:00 a.m. to 7:00 p.m.
20            Q.   And the rate of pay?
21            A.   My salary when I left was approximately
22                 $56,000 a year.
23            Q.   Did you belong to a union?
24            A.   No.
25            Q.   How did your job come to an end?  Did
```

STAR_MARSHALL0008893

1   Marshall Witness

2      you quit, were you fired, or were you

3      laid off?

4   A. Fired.

5   Q. On what day were you actually fired?

6   A. March 1st, 2011.

7   Q. Who fired you?

8   A. My district manager, Jennifer Gurtov.

9   Q. Jennifer, J-E-N-N-I-F-E-R?

10   A. Yes.  G-U-R-T-O-V.

11   Q. T-O….

12   A. V, like Victor.  Yes.  That's it.

13   Q. That's it?

14   A. Um-hum.

15   Q. Okay.  Anybody else present?

16   A. A witness, another district manager—

17   Q. (Interposing).  Wait, wait.  I want the

18      names.  Okay.  The district manager is

19      Jennifer Gurtov.

20   A. Gurtov.

21   Q. Who else?

22   A. Mark, I don't know his last name.

23   Q. M-A-R-K or C?

24   A. Might be a K, I'm not sure.

25   Q. You don't know his last….  What's his

STAR_MARSHALL0008894

```
 1        Marshall Witness
 2                  job title?
 3        A.    District manager.
 4        Q.    Anybody else?
 5        A.    No.
 6        Q.    And what reason were you given for the
 7              discharge?
 8        A.    That I falsified bank deposits.
 9        Q.    Did you falsify bank deposits?
10        A.    No.
11        Q.    Did they say what day you did it?
12        A.    No.
13        Q.    They didn't give you the day?
14        A.    No.
15        Q.    So it's your testimony that you didn't
16              falsify any bank deposits.  What was
17              your job status between the period from
18              January 5th of 2011 to March 1st.
19        A.    I was on FMLA.         :
20        Q.    Rather, it would have been February 28th.
21              February 28th, 2011 you were on Family
22              Medical Leave Act.  You were on a leave
23              under the Family Medical Leave—
24        A.    (Interposing).  Yes.
25        Q.    And that began when?
```

Marshall-05-09-11                                    8

STAR_MARSHALL0008895

1      Marshall Witness

2      A.   That began on January 5th.

3      Q.   January 5th?

4      A.   Yes.

5      Q.   And your return to work date was?

6      A.   March 1st, 2011.

7      ALJ IAFRATE:  Okay.  Let's see.  Okay.

8   I don't have anything else to ask you.  If this

9   is adverse to the claimant, the employer can

10  apply to reopen.  If the employer applies to

11  reopen, they'd have to show good cause why they

12  weren't present here today.  So far, I have no

13  reason to disbelieve Ms. Marshall.  So do you

14  have any questions that you want to ask her?

15      MR. GOTTLIEB:  I think I just have a

16  couple questions.

17      ALJ IAFRATE:  Okay.

18  BY MR. GOTTLIEB:

19      Q.   Were you ever—

20      ALJ IAFRATE:  (Interposing).  Don't lead

21  her.

22      MR. GOTTLIEB:  I'm sorry?

23      ALJ IAFRATE:  Don't lead her.

24      Q.   Were you ever told there was any

25         violation of company rule or policy

STAR MARSHALL0008896

Marshall Witness

1

2         before you notified your employer that

3         you'd be taking FMLA leave?

4              ALJ IAFRATE:   That is a leading

5    question.   I don't know what you're asking.

6    That's a leading question.   You're asking her for

7    a yes, no answer.   You need to ask her an open-

8    ended question.   You can say, were you ever

9    informed of a policy that you violated?

10             MR. GOTTLIEB:   That's not exactly what

11   I'm asking.

12             ALJ IAFRATE:   Well your question's

13   leading, so you've got to rephrase it.   I'm not

14   going to allow you to ask it the way it is.

15   Okay?   Open-ended questions.   She's your witness.

16   You can't put words in her mouth.   If you're

17   asking what rule—were you aware of the rule that—

18   did they tell you what rule you violated.

19             MR. GOTTLIEB:   That's not exactly what

20   I'm asking.   You know, I don't think I have any

21   testimony to take from my client, actually.

22             ALJ IAFRATE:   Okay.   Then I'll take a

23   closing statement.   Go ahead.

24             MR. GOTTLIEB:   Misconduct, under the

25   unemployment law is a willful or wanton disregard

STAR_MARSHALL0008897

1       Case Duly Called

2       of the employer's rules to the detriment of the

3       employer.  And misconduct must be shown through

4       substantial evidence submitted by the employer.

5       The employer did not appear at this hearing, has

6       not submitted any evidence during this hearing

7       that Ms. Marshall engaged in any misconduct,

8       willful or otherwise; nor has the employer

9       appeared and presented any evidence that Ms.

10      Marshall engaged in any conduct that was to the

11      detriment of the employer.  Accordingly, the

12      finding should be that Ms. Marshall has not

13      engaged in any misconduct and she should be

14      entitled to unemployment benefits.

15              ALJ IAFRATE:  Okay.  At this time, this

16      hearing is closed.  You'll get a written decision

17      in the mail.  Thank you for (crosstalk).

18              MS. MARSHALL:  Thank you.

19              ALJ IAFRATE:  You're welcome.

20              MR. GOTTLIEB:  Thank you.

STAR_MARSHALL0008898

This is to certify that I have typed the above record from a recording produced from an electronic sound recording system in the State of New York and that, to the best of my knowledge and belief, the above record was typed by me is a true and accurate record of the recording.

*Wanda Henry*

_____

Wanda Henry

For UBIQUS REPORTING, INC.
22 Cortlandt Street, Suite 802
New York, NY 10007

Date recording was transcribed:

September 14, 2011

STAR_MARSHALL0008899

:

E X H I B I T S

CLAIMANT

EXHIBIT          DESCRIPTION                    I.D./IN EV

Marshall-05-09-11                    13

STAR_MARSHALL0008900



**Thompson Wigdor LLP** ATTORNEYS AND COUNSELORS AT LAW

85 Fifth Avenue
New York, NY 10003
Tel 212.257.6800
Fax 212.257.6845
www.thompsonwigdor.com

**David E. Gottlieb**
dgottlieb@thompsonwigdor.com

October 10, 2011

**VIA EMAIL AND U.S. MAIL**

Estela Diaz, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036

> Re:     Serenity Marshall v. Starbucks Corporation, et al., 11 Civ. 2521 (RMB) (KNF)

Dear Estela:

Please accept the following supplemental disclosures following our telephone conference on
Friday, September 30, 2011:

**Interrogatory No. 2**

Defendants requested the identity of every employer to which Plaintiff applied for employment
after her termination from Starbucks.  Plaintiff identified The Post-Graduate Center for Mental
Health and Old Navy, both of which she has been employed at following the termination of her
employment.  Defendants requested any additional potential employers.  Subject to and without
waiving the previously asserted objections, Plaintiff also applied for employment at Target, CVS
and Apple.

**Interrogatory Nos. 7 and 8**

Defendants requested identification of each person at Starbucks whom Plaintiff informed about
her medical condition.  Plaintiff provided this information and also advised that there are others
whom she cannot identify.  Defendants stated a deficiency with this response because Plaintiff
did not state whether the failure to identify additional persons was on the basis of recall or
objection.  Plaintiff clarifies that she cannot recall the identity of additional persons whom she
may have informed about her medical condition.



DEFENDANT'S
EXHIBIT 7C
12-8-11
NO. 40
PENGAD 800-631-6989

**Thompson Wigdor LLP** ATTORNEYS AND COUNSELORS AT LAW

*Estela Diaz, Esq.*
October 10, 2011
Page 2

## Interrogatory No. 12

Defendants requested a computation of damages.  Plaintiff previously advised that this interrogatory was premature absent additional discovery.  Defendants have repeated the request for a damages calculation.  Plaintiff hereby provides the following approximate calculation of damages, subject to change:

- Backpay through October 2011 (not inclusive of unemployment compensation, interest, raises, upward mobility, benefits and other non-salary compensation): $49,000

- Frontpay through date of retirement (not inclusive of interest, raises, upward mobility, benefits and other non-salary compensation): $775,000

- Compensatory damages for emotional distress, harm to reputation, career progression and other elements of compensatory damages:  $1,000,000

- Punitive damages:  $2,000,000

- Liquidated damages: $824,000

- Attorneys' Fees and Costs:  To be determined

## Document Request No. 3

Defendants requested documents regarding Plaintiff's employment at Starbucks in any social media.  Plaintiff provided all of her communications on social media regarding Starbucks, even though the relevance of such communications was questionable at best.  The redactions on such pages involve private, personal communications between non-parties and Plaintiff that are utterly irrelevant.  Defendants believe these documents are relevant and responsive but were unable to articulate how these documents were relevant to any issue in the litigation.

## Document Request No. 12

Defendants requested documents concerning any legal proceedings Plaintiff has ever been a party to at any time.  Plaintiff responded that she has not been a party to any employment related litigation or litigation involving allegations of discrimination or retaliation.  Defendants requested Plaintiff to identify any legal proceeding involving Starbucks.  Plaintiff objected to this request on grounds that it sought information already within Defendants' control.  Subject to and without waiving the previously asserted objections, other than any legal proceeding to which Starbucks was a party, Plaintiff has not been a party to any legal proceeding involving Starbucks.

# Thompson Wigdor LLP ATTORNEYS AND COUNSELORS AT LAW

*Estela Diaz, Esq.*
October 10, 2011
Page 3


**Document Request No. 23**

Defendants requested resumes and job applications with references to Starbucks. Plaintiff's resume that she used after her termination from Starbucks is attached hereto.

Please feel free to call with any questions.

Sincerely,

David E. Gottlieb

Enc.

Serenity Marshall
1964 Grand Concourse #1E
Bronx, NY 10457

Serenitygranted6@yahoo.com    Cell: 917-334-8699

Dedicated store manager with 7+ years of experience in customer service management, retail and food service settings. Consistently achieved high customer satisfaction rankings, improvements to the bottom line and turnaround of underperforming operations.
Respected builder and leader of customer-focused teams. Instills a shared, enthusiastic commitment to customer service as a key driver of company goal attainment. Leads by example and ensures the execution of all safety, security, quality and store operations policies.

Areas of Expertise

*Customer Service Management    *Customer Recovery Solutions
*Retail Operations Management    *Customer Satisfaction Enhancement
*Visual Presentation Strategies    *Sales & Margin Improvement
*Hiring, Teambuilding & Training    *Cost-Reduction Strategies


Professional Experience

Post Graduate Center for Mental Health- New York, NY     3/11- present
Counselor, 3/11- present


Counsel with emphasis on prevention. Work with individuals and groups to promote optimum mental health. Analyze information and evaluate results to choose the best solution and solve problems.

Selected Contributions:

*Run workshops and courses about mental health issues.
*Prepare and maintain all required treatment records and reports.
*Guide clients in the development of skills and strategies for dealing with their problems.
*Evaluate clients' physical or mental condition based on review of client information.
*Monitor clients' use of medications.

Starbucks Coffee Company - New York, NY     5/02 to 3/11
Store Manager, 11/04 to 3/11
Assistant Store Manager, 6/03 to 11/04
Shift Supervisor, 8/02 to 6/03
Barista, 5/02 to 8/02

CONFIDENTIAL

SM 00422

Promoted to manager position to recruit, train and supervise 30+ partners (employees). Set the example of how to consistently exceed customer expectations through a relentless focus on the customer and understanding what the customer wants and how to best deliver the experience. Continuously sought opportunities to improve self and others through a commitment to hire, coach and develop partners to achieve their potential by leading and empowering in a positive manner. Accountable to prioritizing and delivering quality results and ensuring financial contributions were maximized. Exercised independent judgement and discretionary powers in the day-to-day performance of job duties, and ensured all policies were implemented and maintained in a consistent manner.

Selected Contributions:

*Awarded "Manager of the Quarter" in 2006 for achievement of sales goals, a perfect score on "Customer Snapshots" (mystery shopper program) and leadership role in community involvement initiatives.
*Became a certified MCM (manager-coach-mentor) for external RMT (retail management trainee) candidates and successfully led three trainees through an intensive twelve week program.
*Managed two locations simultaneously for over a month during a peer's absence.
*Appointed district lead on numerous occasions while district manager was unavailable.
*Promoted from a Level I to Level II store in 11/05 after removing lower volume store from the "red-line" listing by increasing sales and total contribution to bottom line.
*Exemplified the second-to-none customer service delivery for which Starbucks Coffee is internationally renowned in all interactions with customers.
*Promoted fifteen baristas to shift supervisors, seven shift supervisors to assistant store managers and two assistant store managers to store managers.

—

Education

City College - New York, NY    2/98 to 5/03
    Earned BA in English

Training

 Completed numerous courses and seminars in customer service, sales strategies, inventory control, loss prevention, time management, leadership, performance assessment and food safety including but not limited to Situational Leadership, Increasing Human Effectiveness, Servant Leadership and the Franklin Covey Organizational Workshop.

.

CONFIDENTIAL

SM 00423