```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 17 2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SERENITY MARSHALL,
                    Plaintiff,

-v-

STARBUCKS CORPORATION AND JENNIFER
GURTOV, IN HER INDIVIDUAL AND OFFICIAL
CAPACITIES,
                    Defendant.
------------------------------------------------------------X

11 Civ. 02521 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Serenity Marshall filed a Complaint in this matter on April 11, 2011, alleging that she was unlawfully prohibited from returning to work and terminated from her employment because she took medical leave for surgery to remove uterine fibroids. (Compl. ¶¶ 2-3). She asserts claims for interference with her rights under the Family Medical Leave Act (FMLA); retaliation under the FMLA; discrimination and retaliation in violation of New York State Human Rights Law (NYSHRL) and New York City Human Rights Law (NYCHRL) based on disability; and claims for aiding and abetting these alleged state-law violations. (Compl. ¶¶ 45-87). Defendants have moved for summary judgment on all claims.

## I. BACKGROUND

    Having reviewed the parties' motion papers, the Court concludes—as set forth below—that Defendants' motion may be resolved on certain of Plaintiffs claims as a matter of law and that on the remainder of Plaintiffs' claims there are clear disputed issues of fact precluding a grant of summary judgment. As such, the Court does not undertake a detailed recitation of all of the facts in this matter, and instead provides a general background to establish the context for its

decision and, where appropriate, highlights the particular factual issues and disputes that inform its conclusion.

The following facts are undisputed. Marshall began her employment at Starbucks in roughly 2002 as a barista, and was promoted to store manager in 2005, serving as manager to three Starbucks locations during this time. (Def. SMF ¶ 25; Pls. RSMF ¶ 25; Guha Decl. Ex. B at 29:3-24, 35:5-38:18). Jennifer Gurtov became Marshall's district manager in 2008 and, when it became necessary for Marshall to take a leave of absence to handle a personal situation in 2009, Gurtov worked to ensure Marshall's store was covered while Marshall was away—after which Marshall returned to her job. (Def. SMF ¶¶ 26-29; Pls. RSMF ¶¶ 26-29; Guha Decl. Ex. G at 94:13-19; Guha Decl. Ex. B at 247:248; Guha Decl. Ex. I).

In roughly November 2010, Marshall informed Gurtov that she was experiencing physical discomfort, and in early-to-mid December informed her that she would likely need surgery to remove uterine fibroids. (Def. SMF ¶¶ 34-35; Pls. RSMF ¶¶ 34-35; Guha Decl. Ex. B at 257:8-258:3, 264:9-24, 278:16-23; Guha Decl. Ex. G at 165:18-166:9, 177:9-11). On December 20 or 21, 2010, Gurtov came to the store in which Marshall worked for a scheduled Store Plan of Action Visit, at which Marshall informed her that she would need surgery for her fibroids, which would likely require eight-to-twelve weeks of medical leave. (Def. SMF ¶¶ 55, 57-59; Pls. RSMF ¶¶ 55, 57-59; Guha Decl. Ex. B at 282:19-284:13, 286:15-287:16). Gurtov's reaction to Marshall informing her that this period of medical leave would be necessary is disputed, as explained in more detail below.

After Marshall informed Gurtov of her need for medical leave, the two then discussed Marshall's cash-handling and, in particular, her completion of the Daily Records Books (DRBs) in which the store's cash management was logged. (Def. SMF ¶¶ 63; Pls. RSMF ¶¶ 63; Guha

2

Decl. Ex. B at 290:25-291:21; Marshall Decl. ¶¶ 5, 16-18). The parties agree that Marshall's performance in cash-handling procedures and filling out the DRBs was not in compliance with Starbucks written cash-handling policies, although the parties contest the significance of these errors. (Def. SMF ¶¶ 23, 64-66, 68-69; Pls. RSMF ¶¶ 23, 64-66, 68-69; Guha Decl. Ex. B. at 290:12-298:9). In particular, Defendants contend that Marshall falsified her DRB entries, and that these errors were serious and justified Marshall's termination; Marshall argues that such errors were tolerated and routine among store managers, and were a pretext for her unlawful termination.

Marshall consulted with her physician and ultimately began medical leave on January 5, 2011, with approval from Starbucks. (Def. SMF ¶¶ 81, 84-85; Pls. RSMF ¶¶ 81, 84-85; Guha Decl. Ex. B at 228:21-229:17 & Exs. 22, 23; Guha Decl. Ex. L). On January 5, 2011, Gurtov returned from a previously scheduled vacation and, over the next several days, consulted with Tina Pizarro and Nancy Murgalo at Starbucks regarding whether Marshall should be terminated. Pizarro and Murgalo informed Gurtov that Marshall's violations were serious and her situation was consistent with other cases in which employees were terminated. (Def. SMF ¶¶ 87, 89-94; Pls. RSMF ¶¶ 87, 89-94; Guha Decl. Ex. G at 203:12-23, 212:5-22, 214:11-215:23; Guha Decl. Ex. N at 37:6-13; Guha Decl. Exs. O, P). Marshall returned to work on March 1, 2011, at which time she met with Gurtov and was terminated. (Def. SMF ¶¶ 97-98; Pls. RSMF ¶¶ 97-98; Guha Decl. Ex. B. at 319:13-320:4).

## II. ANALYSIS

Summary judgment is proper only if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Ramos v. Baldor Specialty Foods, Inc.*, __ F.3d __, 2012 U.S. App. LEXIS 14333, at *9 (2d Cir. July 12, 2012). In reviewing the evidence

on a motion for summary judgment, courts are to construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* A fact is material if it might affect the outcome of the suit under the governing law and an issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

### A. FMLA Interference Claim

Defendant argues that Marshall's FMLA interference claim fails as a matter of law because Marshall was provided the full FMLA leave she requested, notwithstanding that she was immediately terminated at the end of that leave. (Mot. at 16). Moreover, Defendants contend that any claim she can state on these facts sounds in retaliation, not interference with her FMLA rights. (Mot. at 15-17). The Court disagrees.

As Plaintiff notes, the FMLA provided Marshall not only with the right to take leave, but also the right to be restored to the position she held when that leave began or an equivalent position. *See* 29 U.S.C. 1614(a)(1). A number of decisions by courts in the Second Circuit have recognized that an interference claim may be stated when an employer refuses to allow an employee to return to the position they held, including in circumstances where the plaintiff had been provided the full amount of requested medical leave. *See Dicara v. Conn. Rivers Council, Boys Scouts of Am.*, 663 F. Supp. 2d 85, 96 (D. Conn. 2009) ("A reasonable trier of fact could determine that the CRC interfered with DiCara's rights under the FMLA by terminating the Plaintiff upon his return to work."); *Gauthier v. Yardney Tech. Prods.*, No. 05-cv-1362, 2007 U.S. Dist. LEXIS 67448, at *10-14 (D. Conn. Sept. 13, 2007) (finding prima facie showing of interference was made where the plaintiff had not been allowed to return to the position he held after FMLA leave despite defendant's contention that the claim was properly one for retaliation);

4

*Roberts v. Ground Handling, Inc.*, 499 F. Supp. 2d 340, 355-56 (S.D.N.Y. 2007) (finding that plaintiff could establish an FMLA interference claim if she showed she properly sought reinstatement because "it is clear that she was not reinstated to her position or an equivalent one at that time"); *Carpo v. Wartburg Lutheran Home for the Aging*, No. 05-cv-1169, 2006 U.S. Dist. LEXIS 74856, at *4-5, *14-17 (E.D.N.Y. Oct. 16, 2006); *cf. Belgrave v. City of New York*, 95-cv-1507, 1999 U.S. Dist. LEXIS 13622, at *133-35 (E.D.N.Y. Aug. 31, 1999).

The cases Defendants cite are distinguishable or do not support their position. In *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 428-29 (S.D.N.Y. 2004), the court noted that a claim could be brought for interfering with the right to reinstatement, but found that the plaintiff had no such right because she was unable to fulfill her duties. This case thus supports Plaintiff's position. In *Colombo v. E. Irondequoit Cent. Sch.*, No. 07-cv-6270, 2010 U.S. Dist. LEXIS 141961, at *42-43 (W.D.N.Y. Dec. 17, 2010), the court found that the plaintiff conceded she had no interference claim when she could not articulate the basis for this claim. Plaintiff has no such shortcoming here. And *Serby v. New York City Dep't of Educ.*, No. 09-cv-2727, 2012 U.S. Dist. LEXIS 36841, at *18-20 (E.D.N.Y. Mar. 20, 2012), is distinguishable because the plaintiff in it had been allowed to return to the same conditions of work, and it was only later that the allegedly adverse employment action occurred. *See also Yanklowski v. Brockport Cent. Sch. Dist.*, 794 F. Supp. 2d 426, 428 (W.D.N.Y. 2011); *LeClair v. Berkshire Union Free Sch. Dist.*, 2010 U.S. Dist. LEXIS 114835, at *15-18 (N.D.N.Y Oct. 28, 2010); *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 202-03 (S.D.N.Y. 2009).

Defendants point out that the FMLA does not prohibit terminating employees while they are on leave, noting that Plaintiff must still show that her FMLA leave was causally related to the decision to terminate her. (Reply at 3-4); *see Akinfaderin v. W. P. Carey & Co. LLC*, No. 11-cv-

5

3184, 2011 U.S. Dist. LEXIS 150740, at *15 (S.D.N.Y. Dec. 28, 2011); *Geromanos*, 322 F. Supp. 2d at 428-29 ("[A]n employee may be terminated while on medical leave, as long as the taking of the FMLA leave was not the cause for the termination."); *Santos v. Knitgoods Workers' Union, Local 155*, No. 99-cv-1499, 1999 U.S. Dist. LEXIS 9036, at *7-9 (S.D.N.Y. June 11, 1999). This is true, but, as discussed below, there remains a genuine issue of material fact as to the reasons for Marshall's termination, and this dispute is sufficient to forestall summary judgment on Marshall's interference claim based on Defendants' arguments with respect to causation.

### B. FMLA Retaliation Claim; NYHRL and NYCHRL Discrimination Claims

The Court analyzes FMLA retaliation claims under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004); *see also Roberts v. Health Ass'n*, 308 Fed. Appx. 568, 570 (2d Cir. 2009) (unpublished). Under this test, Marshall bears the initial burden of establishing a prima facie case of retaliation. *Di Giovanna*, 651 F. Supp. 2d at 203. If she meets this burden, Defendants have the burden of articulating a legitimate, non-retaliatory reason for the termination. *Id.* If Defendants do so, the burden shifts back to Marshall to demonstrate that it is more likely than not that the decision to terminate her was motivated, at least in part, by a retaliatory reason. *Id.* To satisfy this burden, Marshall may rely on evidence presented to establish a prima facie case, as well as addition evidence, whether direct or circumstantial. *Id.* Marshall's state law and municipal law discrimination claims are also analyzed under this rubric. *See O'Reilly v. Consol. Edison Co. of N.Y.*, Inc., 374 F. Supp. 2d 278, 285 (E.D.N.Y. 2005); *see also Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 & n.3 (N.Y. 2004).

Here, Defendants do not argue that Plaintiff has not met the first prong of the *McDonnell-*

*Douglass* analysis—a prima facie case of retaliation under the FMLA and discrimination under New York law. (Br. at 17-22). As such, questions before the Court on these claims are the sufficiency of Defendants' proffered reasons for Marshall's termination and her evidence that these reasons are pretextual. Defendants assert that Mitchell was terminated because of her erroneous DRBs and failure to follow Starbucks' cash-management policies. If non-pretextual, these would be legitimate and lawful reasons for Marshall's termination. *See, e.g.*, *Pacenza v. IBM Corp.*, No. 04-cv-5831, 2009 U.S. Dist. LEXIS 29778, at *34-35 (S.D.N.Y. Apr. 1, 2009) (violation of company policies was a legitimate reason for termination)

Defendants having proffered legitimate, non-discriminatory reasons for Marshall's termination, the Court now turns to the third inquiry under *McDonnell Douglas*—whether Marshall has presented sufficient evidence of pretext to survive Defendants' motion. "A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." Gallo v. Prudential Residential Servs., Ltd. Pshp., 22 F.3d 1219, 1224 (2d Cir. N.Y. 1994); *see also* Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. N.Y. 1998). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The court's role in deciding a motion for summary judgment "is to identify factual issues, not to resolve them." Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 174 (2d Cir. N.Y. 2012) (quotation marks and citations omitted). Although Defendants have marshaled significant evidence supporting their claim that Marshall was terminated for legitimate nondiscriminatory reasons—which the Court need not discuss in detail here—there remain disputed issues of material fact precluding summary judgment.

Most significantly, Marshall testified at her deposition that after she informed Gurtov that she would be taking medical leave, and that this leave would be longer than she anticipated,

7

Gurtov became "very upset" and began asking whether Marshall believed that the employees she supervised could run the store in her absence. (Gottlieb Decl. Ex. 35 at 282:19-284:13). According to Marshall, Gurtov said "this cannot run without you. Who is going to run it? These ladies cannot run it. . . . I'd like to, but I cannot hold the store for you." (Gottlieb Decl. Ex. 35 at 282:19-284:13). Defendants, taking Marshalls testimony as true for purposes of their motion, argue that Gurtov needed only to allow Marshall to return to an equivalent position after her medical leave and was not obligated under the FMLA to let Marshall return to the particular store at which she worked. (Reply at 5). However, on this motion for summary judgment the Court must draw all reasonable inferences in Marshall's favor, and a reasonable jury could construe Gurtov's comments as not merely suggesting that Gurtov would not hold Marshall's particular *store location* for her, but rather that Gurtov would not promise to hold Marshall's *job* for her. *See Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (explaining that the evaluation of ambiguous acts is a task for the jury, not the judge on summary judgment, and that summary judgment is inappropriate where there are admissible materials in the record that make it "arguable" that the claim has merit); *Altomare v. Wells Fargo Sec.*, LLC, No. 09-cv-9702, 2012 U.S. Dist. LEXIS 19209, at *25-27 (S.D.N.Y. Feb. 15, 2012) (explaining that the meaning and import of allegedly discriminatory comments is an issue for the jury). If the jury took this view of Gurtov's comments, they could conclude that these comments are evidence of pretext.

  In addition, there is a dispute of fact as to the significance and importance of Marshall's errors in filling out the DRB and her compliance with Starbucks cash-management policies. According to Marshall, Gurtov had previously reviewed Marshall's DRBs, in which she had also not always followed Starbucks policies, but had not treated these matters as serious violations.

8

(Marshall Decl. ¶¶ 10-19; *cf. also* Gottlieb Decl. Ex. 34 at 320:6-321:25). Although Defendants note that Marshall's performance reviews had suggested room for improvement in her cash-handling and DRBs (Guha Reply Decl. Exs. G, H), there appears to remain a continuing dispute as to whether Gurtov only began treating the DRB deficiencies as a serious issue immediately after being informed that Marshall was taking medical leave. Moreover, Marshall has submitted evidence suggesting that cash-handling errors and inaccuracies were routine among the stores that Gurtov supervised and that Gurtov reviewed these DRBs with some frequency. (Gottlieb Decl. ¶¶ 44-53 & Ex. 33, Ex. 34 at 82:11-25, 88:10-89:24, 97:15-98:12, 101:9-13). Again, making all reasonable inferences in Marshall's favor, a jury could likewise view this evidence as corroborating Marshall's other evidence that errors in the DRBs or cash-handling violations were not a point of serious concern, and infer from this that Gurtov's stated reasons are pretextual. *See, e.g., Terry v. Ashcroft*, 336 F.3d 128, 146 (2d Cir. 2003).

Defendants counter that Gurtov terminated other employees based on cash-handling violations and that Marshall sent two e-mails warning her employees regarding cash-handling violations. (Guha Reply Decl. Ex. J). However, to a large extent the evidence submitted by Defendants does not establish that there is no genuine dispute of material fact—rather, it appears that there is conflicting evidence on this point, the import of which is a question for the jury. *See Redd*, 678 F.3d at 174. In particular, Marshall contends that the circumstances surrounding the termination of these other employees are not comparable to those under which she was terminated, arguing—among other things—that the cash-handling violations were more serious than hers, that they had been previously disciplined over a period of time, and that other performance issues played a role in these terminations. (Gottlieb Decl. Exs. 30, 31; Guha Reply Decl. Exs. B, C; Opp. at 21-22). "Whether two employees are similarly situated ordinarily

9

presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

Furthermore, a reasonable jury could view the timing of the events surrounding Marshall's termination as suggestive of pretext. Viewed in the light most favorable to Marshall, the evidence suggests that (1) Gurtov's assessment of Marshall's DRB's began immediately after Marshall informed her that she would require leave, and need a longer leave than previously thought; (2) Gurtov began to investigate terminating Marshall immediately after her leave began; and (3) Gurtov terminated Marshall immediately on her return from medical leave. A jury could reasonably infer that this timing is indicative of pretext. *See Ridgeway v. Royal Bank of Scotland Group*, No. 11-cv-976, 2012 WL 1033532, at *12 (D.Conn. March 27, 2012); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

In sum, although Defendants' have presented a substantial case that Marshall was terminated because of her cash-handling issues, there is sufficient evidence such that a jury could reject Defendants' arguments and conclude that the reasons Defendants provide were a pretext to conceal an unlawful motive. The Court therefore cannot grant summary judgment on these facts.

### C. State Law Retaliation Claims

Defendants also move for summary judgment on Plaintiffs' NYSHRL and NYCHRL claims for retaliation, Counts Four and Seven of her Complaint, which allege that Defendants retaliated against her for "engage[ing] in protected activities." (Compl. ¶¶ 62, 77). Defendants argue that, as a matter of law, Marshall did not engage in protected activities sufficient to support a retaliation claim under the NYSHRL and NYCHRL. (Mot. at 22-24).

Under New York State and New York City law, it is unlawful to retaliate against an employee for opposing a discriminatory practice. *Forrest*, 3 N.Y.3d at 312. To make out a

10

claim for retaliation under these laws, a plaintiff must show "(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." *Id.* at 312-13. Engaging in a protected activity according to the New York Court of Appeals means "opposing or complaining about unlawful discrimination." *Id.* at 313. In fact, the code sections governing such retaliation claims provide that it is unlawful to take an adverse employment action against a person because they have opposed or complained about discriminatory practices. *See* N.Y. Exec. Law. § 296(e) ("It shall be an unlawful discriminatory practice . . . to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."); N.Y. City Administrative Code § 8-107 [7]; *Forrest*, 3 N.Y.3d at 312-313 (citing N.Y. Exec. Law § 296(e) and Administrative Code of City of NY § 8-107 [7] as governing such retaliation claims).

Plaintiff cites no evidence and makes no argument that she was retaliated against for opposing or complaining about a discriminatory practice, but rather argues that "[a]lthough generally a 'protected activity' is a complaint, taking medical leave also constitutes a protected activity under employment discrimination laws." (Opp. at 25). Plaintiff does not, however, cite any case in which such activities were found to support a retaliation claim under the NYSHRL or NYCHRL, and this argument is counter to the text of the relevant statutes and New York precedent. *See, e.g.,* N.Y. Exec. Law. § 296(e); N.Y. City Administrative Code § 8-107 [7]; *Forrest*, 3 N.Y.3d at 312-13; *Suriel v Dominican Republic Educ. & Mentoring Project, Inc.*, 85 A.D.3d 1464, 1466-67 (N.Y. App. Div. 3d Dep't 2011); *Brook v. Overseas Media, Inc.*, 69 A.D.3d 444, 445 (N.Y. App. Div. 1st Dep't 2010); *Grovesteen v New York State Pub. Employees*

11

*Fedn.*, AFL-CIO, 83 A.D.3d 1332, 1334 (N.Y. App. Div. 3d Dep't 2011). The cases that Plaintiff relies on, *Guinup v. Petr-All Petroleum Corp.*, 786 F. Supp. 2d 501 (N.D.N.Y 2011) and *Sabatino v. Flik Int'l Corp.*, 286 F. Supp. 2d 327, 338 (S.D.N.Y. 2003), which considered Americans with Disabilities Act and FMLA claims, respectively, are not to the contrary.

### D. Aiding and Abetting Liability

Defendants argue that Marshall's aiding and abetting claims under NYSHRL and NYCHRL must be dismissed because Defendant Starbucks is entitled to summary judgment on all of Marshall's other claims, and aiding and abetting liability cannot exist absent a principal violation. (Mot. at 24-25; Reply at 10). However, as described above, Defendants' motion for summary judgment fails as to a number of Marshall's claims, rendering this argument untenable.

## CONCLUSION

Summary judgment is GRANTED on Marshall's Fourth and Seventh Causes of Action, and is otherwise denied. A scheduling conference is set for October 4, 2012, at 11:00 am. Pretrial materials, as set forth in Section 5 of this Court's Individual Rules and Practices in Civil Cases shall be submitted no later than October 1, 2012.

SO ORDERED:

Dated: September __, 2012
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

12